FILED
CLERK, U.S. DISTRICT COURT

JUN 2 3 2008

CENTRAL DISTRICT OF CALIFORNIA
BY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | | |
|---|---|---|
| DEREK BARBOZA, | ) | Case No. 03-3855 AHM (AJW) |
| Plaintiff, | ) | |
| | ) | **ORDER ADOPTING REPORT** |
| v. | ) | **AND RECOMMENDATION OF** |
| | ) | **MAGISTRATE JUDGE** |
| D. M. KELSEY, | ) | |
| Defendant(s). | ) | |

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has reviewed the entire record in this action, the attached Report and Recommendation of Magistrate Judge ("Report"), the objections thereto, and the Supplemental Report and Recommendation of Magistrate Judge.  Good cause appearing, the Court concurs with and adopts the findings of fact, conclusions of law, and recommendations contained in the Report after having made a *de novo* determination of the portions to which objections were directed.

**IT IS SO ORDERED**.

DATED: _____, 2008

A. HOWARD MATZ
United States District Judge



FILED
CLERK, U.S. DISTRICT COURT

SEP 2 5 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

|  |  |
|---|---|
| DEREK BARBOZA,<br><br>        Plaintiff,<br><br>        v.<br><br>D. M. KELSEY,<br><br>        Defendant. | No. CV 03-3855 AHM (AJW)<br><br>REPORT AND RECOMMENDATION OF<br>MAGISTRATE JUDGE |

### Proceedings

After his second amended complaint was dismissed with leave to amend, plaintiff, a state prisoner proceeding pro se and in forma pauperis, filed a verified third amended complaint ("TAC") pursuant to 42 U.S.C. § 1983.    The only remaining defendant is D. M. Kelsey, who is identified as a Correctional Lieutenant and Senior Hearing Officer at California State Prison in Lancaster, California ("CSP-LAC"). Kelsey is sued in his individual capacity only for monetary, declaratory, and injunctive relief. [TAC 3, 16].

Kelsey filed a motion to dismiss the TAC ("MTD") for failure to exhaust administrative remedies and failure to state a claim upon which relief can be granted.  Plaintiff filed an opposition to the motion ("Opp.").

### Fact Allegations

The complaint and attached exhibits allege the following facts. Plaintiff was placed in administrative segregation on February 6, 2001 because he was deemed a threat to the safety and security of the institution

pending investigation of his involvement in the attempted murder of another inmate, who was attacked and stabbed with an "Inmate Manufactured Weapon," specifically, a knife. [See TAC 2, 5 & Ex. A]. A Rules Violation Report ("RVR") was issued by Correctional Officer Garcia ("Garcia") on February 6, 2001 charging plaintiff with the attempted murder of inmate Ramirez. [TAC 2 & Ex. B]. The RVR states that Garcia responded to another officer's alarm and observed plaintiff involved in a fight with three other inmates, and that while plaintiff was on his knees on the floor after being ordered into a prone position, he attempted slide a weapon under a cell door. [TAC 2 & Ex. B]. The RVR does not allege that plaintiff attacked or stabbed Ramirez. [TAC 2 & Ex. B]. Three other correctional officers in a position to observe the fight—French, Crockett, and Whitcomb—also identified plaintiff as a participant but did not indicate that he personally attacked or stabbed Ramirez or possessed a weapon. [TAC 2-3 & Exs. C & D].

Plaintiff appeared before an Institutional Classification Committee ("ICC") on February 16, 2001 for a review of his placement in administrative segregation. [TAC 4 & Ex. F]. Plaintiff contended that he was wrongly accused of attempted murder. The ICC denied plaintiff's request for release from administrative segregation and imposed a 120-day extension of plaintiff's administrative segregation unit ("ASU") placement pending completion of the disciplinary process. [TAC 4 & Ex. F].

After "two failed attempts to properly adjudicate the RVR" for attempted murder, the RVR charging plaintiff with attempted murder was reissued on January 29, 2002. [TAC 4 & Ex. G]. On February 27, 2002, Officer R. Iverson ("Iverson") was assigned as the Investigative Employee in connection with the RVR. [TAC 4 & Ex. H]. Plaintiff provided defendant Iverson with a list of prepared questions to be asked of Garcia, French, Crockett, and Whitcomb. Plaintiff also requested that Garcia, French, Crockett, Whitcomb, and Lieutenant Mallett be present at the hearing. [TAC 5 & Ex. H]. Plaintiff requested that the knife used in the alleged attempted murder be analyzed for fingerprints, explaining that he "was denied this fingerprinting" in connection with his two previous RVR hearings, and asserting that a fingerprint test would prove that Garcia made an "honest mistake" in identifying him. [TAC 5 & Ex. H]. Plaintiff also asked for photographs taken after the incident of himself and inmate Hayes, who also was involved in the fight. [TAC 5 & Ex. H].

Iverson's report indicates that plaintiff's requests for a fingerprint analysis of the knife and for the

1    photographs were not granted, but no explanation is provided in the report. [TAC 5 & Ex. H].  Iverson said

2    that he attempted to contact Crockett but was unsuccessful. [TAC Ex. H]. Iverson's report also indicates that

3    Garcia, French, and Whitcomb responded to questions written by plaintiff.  Garcia stated that the only person

4    she saw attacking Ramirez was Hayes. [TAC 5 & Ex. H].  She did not know the name of the inmate she saw

5    fighting with plaintiff. [TAC 5 & Ex. H].  French and Whitcomb both said that they did not see plaintiff

6    attack Ramirez at any time, and that they did not see plaintiff with a weapon in his hand or throwing any

7    weapon. [TAC 5 & Ex. H].

8         Kelsey conducted a third disciplinary hearing on the RVR on April 12, 2002. Kelsey denied

9    plaintiff's request for fingerprinting of the alleged attempted murder weapon on the grounds that "staff

10   during the evidence collection process handled the weapon and [plaintiff] could have wiped his prints off

11   prior to is attempt to dispose of the weapon." [TAC, Ex. G]. The hearing report does not refer to any request

12   by plaintiff for photographs.  [TAC, Ex. G].

13        Plaintiff cross-examined Garcia during the RVR hearing.  Plaintiff argued during the hearing that

14   he "was never near Ramirez," was "fighting with inmate Smith," and that "[t]he two fights were unrelated."

15   [TAC, Ex. G].  Plaintiff contended that there was no physical evidence or eye-witness account linking him

16   to the crime. [TAC, Ex. G].

17        Garcia was present during the hearing. Kelsey asked her whether she saw plaintiff fighting with

18   Ramirez.  She answered "no."  Kelsey asked her who it was that she saw fighting with Ramirez.  Garcia

19   answered "Inmate Hayes." [TAC, Ex. G].  After plaintiff reviewed Iverson's report containing the responses

20   to his written questions by French and Whitcomb, plaintiff "stated he was satisfied with the interviews

21   conducted and [that those] previously requested staff witnesses were not required." [TAC, Ex. G].

22        Kelsey found plaintiff guilty of attempted murder by a preponderance of the evidence. [TAC 6 &

23   Ex. G].   He stated that he relied upon (1) Garcia's written RVR and Supplement to the Crime/Incident

24   Report (CDC Form 837) ("CDC Form 837"), including her statement that she observed plaintiff attempting

25   to dispose of a weapon [see TAC, Ex. G]; (2) a CDC Form 837 submitted by Crockett stating that plaintiff

26   and Smith "split apart" from inmates Hayes and Ramirez when Crockett fired a round from his state-issued

27   gas launcher [see TAC, Ex. D]; and (3) a CDC Form 837 submitted by Officer C. Chavez identifying

28   photographs of plaintiff's pants, shirt, and t-shirt with bloodstains on them [see TAC, Ex. I].  Kelsey

1  explained the rationale for his finding in the written hearing decision. [TAC, Ex. G].

2      As a penalty for attempted murder, Kelsey assessed zero days loss of behavior/work credit because

3  "time constraints were not met in this disciplinary [sic]." [TAC, Ex. G]. He referred plaintiff to an ICC for

4  consideration of placement in the security housing unit ("SHU"). [TAC, 17 & Ex. G]. A CSR approved

5  plaintiff's transfer and 24-month SHU term on July 10, 2002; however, it was noted that plaintiff should be

6  retained in ASU because he had a "MERD" (minimum eligible release date) of August 6, 2002, and his

7  "MERD is too short to allow for transfer to a SHU unit."[TAC 9 & Ex. K].

8      Plaintiff filed an inmate appeal challenging the April 12, 2002 RVR hearing and his disciplinary

9  conviction on the grounds that the hearing was defective. [TAC 9 & Ex. L]. Plaintiff asked for a fair

10  hearing to include all of the evidence, fingerprinting of his alleged weapon, and participation of "all

11  witnesses." [TAC, Ex.L]. Plaintiff also alleged that he did not receive a final hearing decision until July 24,

12  2002, not May 2, 2002, as incorrectly noted in the decision. [TAC 9 & Ex. L].

13      After first level review was bypassed, a telephone interview was conducted at the second level of

14  review by Correctional Counselor C. Carson, who concluded that plaintiff had received a fair hearing and

15  that a preponderance of the evidence supported plaintiff's disciplinary conviction for attempted murder.

16  [TAC 9 & Ex. M]. Plaintiff's inmate appeal was denied at the Director's level of review on December 17,

17  2002. [TAC 9-10 & Ex. N].

18      Plaintiff alleges that defendant's actions resulted in the imposition of a "lengthy & excessive SHU

19  term, without affording procedural due process" and constituting "an atypical & severe hardship" under the

20  Fourteenth and Eighth Amendments.   [TAC 10]. Specifically, plaintiff alleges that prison rules and

21  regulations create different privileges and restrictions for different groups of inmates, and in particular

22  between inmates in the general population and those housed in administrative segregation, and that "there

23  is without question a significant difference in the living conditions in general population main-line and those

24  in administrative segregation." [TAC 11-12]. Plaintiff further alleges that he was denied specific privileges

25  and was subjected to restrictions that created a severe and atypical hardship compared to conditions in the

26  general population. [TAC 13-14]. Plaintiff alleges that he was entitled to procedural due process protection,

27  and that Kelsey violated plaintiff's Fourteenth Amendment due process rights by conducting procedurally

28  defective disciplinary hearing, issuing a "falsified" hearing decision, and by not providing plaintiff a

1   finalized copy of the hearing decision for appeal purposes until plaintiff's "expected potential" SHU term

2   was already completed. [TAC 14-15].

3                                                   **Discussion**

4        **Standard governing dismissal for failure to state a claim**

5        A complaint may be dismissed for failure to state a claim upon which relief can be granted. See Fed.

6   R. Civ. P. 12(b)(6). Under federal notice pleading standards, a "claim for relief" requires only a "short and

7   plain statement showing that the pleading is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the

8   defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v.

9   Twombly, — U.S.—,127 S.Ct. 1955, 1964 (2007)(internal quotation marks and ellipsis omitted)(abrogating

10  Conley v. Gibson, 355 U.S. 41 (1957)). To survive a Rule 12(b)(6) motion to dismiss, a complaint "does

11  not need detailed factual allegations," but "a plaintiff's obligation to provide the grounds of his entitlement

12  to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

13  action will not do. Factual allegations must be enough to raise a right to relief above the speculative level,

14  on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic

15  Corp., — U.S. at — , 127 S.Ct. at 1964-1965 (internal quotation marks and ellipsis omitted). A complaint

16  should be dismissed unless it contains "enough facts to state a claim for relief that is plausible on its face,"

17  Bell Atlantic Corp., — U.S. at —, 127 S.Ct. at 1974, and thereby "raise[s] a reasonable expectation that

18  discovery will reveal evidence" to support the plaintiff's claim. Bell Atlantic Corp., — U.S. at —, 127 S.Ct.

19  at 1966.

20       To determine whether a complaint states a claim sufficient to withstand dismissal, a court considers

21  the contents of the complaint and its attached exhibits, as well as matters properly subject to judicial notice.

22  Ramirez v. Galaza, 334 F.3d 850, 854 (9th Cir. 2003), cert. denied, 541 U.S. 1063 (2004); Lee v. City of

23  Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). The court "must accept as true all of the factual allegations

24  contained in the complaint," Erickson v. Pardus, —U.S.—, 127 S. Ct. 2197, 2200 (2007), and construe them

25  in the light most favorable to the plaintiff. Lee, 250 F.3d at 688. Conclusory allegations of law and

26  unreasonable inferences are insufficient to defeat a motion to dismiss. In re Syntex Corp. Sec. Litig., 95 F.3d

27  922, 926 (9th Cir. 1996). Pro se pleadings, however, must be liberally construed. Balistreri v. Pacifica

28

1 | Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

2       Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2)

3 insufficient facts under a cognizable legal theory. SmileCare Dental Group v. Delta Dental Plan of

4 California, Inc., 88 F.3d 780, 783 (9th Cir.) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530,

5 533-34 (9th Cir. 1984)), cert. denied, 519 U.S. 1028 (1996). A motion to dismiss also may be granted if an

6 affirmative defense or other bar to relief, such as the statute of limitation, is apparent from the face of the

7 complaint. See TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999).

8       **Eighth Amendment claim**

9       Defendants argue that plaintiff's Eighth Amendment claim based on his "lengthy and excessive SHU

10 term" is unexhausted and therefore should be dismissed. Plaintiff does not dispute that assertion. [MTD 5-7;

11 Opp. 4-5].

12       Before turning to the question of exhaustion, it is worth noting that although plaintiff alleges a

13 violation of his Eighth Amendment rights, the TAC does not allege facts showing that Kelsey was

14 deliberately indifferent to a serious risk of substantial harm to plaintiff arising from the conditions of

15 plaintiff's SHU confinement. See generally Farmer v. Brennan, 511 U.S. 825, 837-838, 843-844 (1994);

16 Hudson v. McMillian, 503 U.S. 1, 8 (1992). Therefore, the TAC fails to state an Eighth Amendment claim.

17       Even if the TAC could be amended to state a cognizable Eighth Amendment claim, moreover,

18 plaintiff concedes that he did not exhaust his administrative remedies. A prisoner must exhaust prison

19 administrative remedies prior to filing any suit challenging prison conditions, so long as some relief is

20 available through the prison administrative remedy procedures. See 42 U.S.C. § 1997e(a); Woodford v.

21 Ngo, ---U.S.---,126 S.Ct. 2378, 2383, 2385 (2006)(holding that the PLRA requires procedurally proper

22 exhaustion of administrative remedies, and that the exhaustion requirement applies to "any suit challenging

23 prison conditions, not just for suits under §1983")(citing Porter v. Nussle, 534 U.S. 516, 524 (2002)); Booth

24 v. Churner, 532 U.S. 731, 734 (2001)(holding that the PLRA's mandatory exhaustion requirement applies

25 whenever prison administrative remedies can provide "some sort of relief on the complaint stated," even if

26 not monetary relief).

27       The defendant has the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune,

28 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 540 U.S. 810 (2003). Defendant properly characterizes his

1   motion for failure to exhaust prison administrative remedies as an "unenumerated" Rule 12(b) motion.

2   [MTD 1].   See Wyatt, 315 F.3d 1108 at 1119 ("In this Circuit, we have held that the failure to exhaust

3   nonjudicial remedies that are not jurisdictional should be treated as a matter in abatement, which is subject

4   to an unenumerated Rule 12(b) motion rather than a motion for summary judgment.").

5   Plaintiff's "concession to nonexhaustion is a valid ground for dismissal" for failure to exhaust

6   administrative remedies under section 1997e(a).. Wyatt, 315 F.3d at 1120.  Accordingly, even if plaintiff

7   could amend his complaint to state a cognizable Eighth Amendment claim, that claim should be dismissed

8   for failure to exhaust administrative remedies.

9   **Due Process**

10   The TAC alleges that Kelsey violated plaintiff's procedural due process rights in connection with

11   the April 2002 disciplinary hearing and his disciplinary conviction for attempted murder.  Specifically,

12   plaintiff alleges that his "unlawful confinement" constituted an atypical and significant hardship in relation

13   to the ordinary incidents of prison life and therefore deprived him of a liberty interest protected by the

14   Fourteenth Amendment's due process clause.  Plaintiff also alleges Kelsey did not afford plaintiff the

15   process he was due.

16   The requirements of procedural due process apply only to the deprivation of interests encompassed

17   by the Fourteenth Amendment's protection of liberty and property. Burnsworth v. Gunderson, 179 F.3d 771,

18   774 (9th Cir. 1999).  "The Due Process Clause standing alone confers no liberty interest in freedom from

19   state action taken within the sentence imposed." Sandin v. Conner, 515 U.S. 472, 480 (1995). "States may

20   under certain circumstances create liberty interests which are protected by the Due Process Clause. But these

21   interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such

22   an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless

23   imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

24   Sandin, 515 U.S. at 484 (citations omitted).  To determine whether a challenged condition "imposes atypical

25   and significant hardship" or "works a major disruption in [the prisoner's] environment," Sandin, 515 U.S.

26   at 484, 486, a factual comparison must be made between the conditions in the general population and the

27   conditions in administrative segregation or disciplinary segregation, examining the hardship caused by the

28   challenged action in relation to the basic conditions of life as a prisoner. See Jackson v. Carey, 353 F.3d 750,

755 (9th Cir. 2003)(citing Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000);Duffy v. Riveland, 98 F.3d 447, 457 (9th Cir. 1996); Keenan v. Hall, 83 F.3d 1083, 1088-89 (9th Cir. 1996), amended on denial of reh'g, 135 F.3d 1318 (9th Cir. 1998); and Mitchell v. Dupnik, 75 F.3d 517, 522 (9th Cir. 1996)). If the prisoner shows a deprivation creating "an atypical and significant hardship" within the meaning of Sandin, the court must determine whether the procedures used comport with the requirements of due process. Ramirez, 334 F.3d at 860.

> (1)   **Loss of credits**

Defendant contends that to the extent that plaintiff is asserting a section 1983 claim for loss of good time credits, that claims fails because plaintiff did not lose any good time credits in connection with the prison disciplinary proceedings for attempted murder, and because any such claim would be premature under the favorable termination rule of Heck v. Humphrey, 512 U.S. 477, 481 (1994) and Edwards v. Balisok, 520 U.S. 641, 648 (1997). Plaintiff contends that his due process claim does not implicate the duration of his confinement and therefore is not barred by the favorable termination rule.

The United States Supreme Court has held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 486-487. A civil rights claim for damages challenging the legality of a conviction or the length of confinement that has not been so invalidated is not cognizable under section 1983. Heck, 512 U.S. at 486-87; Edwards, 520 U.S. at 648. The applicability of Heck's "favorable termination rule turns solely on whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement." Ramirez, 334 F.3d at 856. "Where the prison's alleged constitutional error does not increase the prisoner's total period of confinement, a successful § 1983 action would not necessarily result in an earlier release from incarceration, and hence, does not intrude upon the 'heart' of habeas jurisdiction. In such cases, the favorable termination rule of Heck and Edwards does not apply." Ramirez, 334 F.3d at 858.

The TAC alleges that Kelsey assessed zero days loss of custody credits, and it does not allege that

1  plaintiff otherwise was deprived of good-time credits or subjected to sanctions that necessarily affected the

2  duration of his confinement.  Defendant also contends that plaintiff "did not lose any good time credits as

3  a result of the RVR hearings at issue."[1] [Opp. 7].  Defendant does not contend that a judgment in plaintiff's

4  favor will "*guarantee* parole or necessarily shorten [his] prison sentence by a single day."  Ramirez, 334

5  F.3d at 858 (quoting Neal v. Shimoda, 131 F.3d 818, 824 (9th Cir. 1997)).  Therefore, Heck's favorable

6  termination requirement does not bar plaintiff's section 1983 due process claim.  See Muhammad v. Close,

7  540 U.S. 749, 754 (2004)(per curiam)(reversing the Sixth Circuit's decision that Heck barred a challenge

8  to a prison disciplinary conviction where "the Magistrate Judge expressly found or assumed that no good-

9  time credits were eliminated" by the prison disciplinary action and noting that Heck's favorable termination

10  requirement has no application where the prisoner's section 1983 suit could not "be construed as seeking

11  a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with

12  the underlying sentence"); Ramirez, 334 F.3d at 859 (holding that a section 1983 action seeking damages

13  and vacation of a prison disciplinary conviction was not barred by Heck where a judgment in the prisoner's

14  favor judgment would not "necessarily accelerate the prisoner's release" where the State had made no

15  showing that expungement of the prisoner's disciplinary conviction was likely to advance his parole date).

16              **(2)      Protected liberty interest**

17          Defendant contends that to the extent that plaintiff alleges that he lost the opportunity to earn good-

18  time credits or work due to his placement in administrative segregation, his due process claim fails because

19  he has no protected liberty interest in earning those credits.  Defendant further contends that plaintiff has no

20  protected liberty interest in remaining in general population housing.  Finally, defendant contends that

21  plaintiff did not suffer restraint amounting to an "atypical and significant hardship." [MTD 9-11].

22          Plaintiff does not allege that he has a state-created liberty interest in earning good-time credits or

23  remaining in general population housing *per se*.  Rather, he alleges that there is a significant difference

24  between the conditions in the general population and the conditions he endured during 16 months of

25  segregated confinement, and that his "severe" and "excessive" term of segregated confinement imposed an

26  _____

27      [1]    The TAC indicates that plaintiff was assessed a 360-day loss of behavior credits following
28  an earlier disciplinary hearing on the RVR for attempted murder, but that conviction was vacated and
ultimately assigned to Kelsey for rehearing. [TAC 4 & Exs. B, G & M].

1  atypical and significant hardship in relation to the ordinary incidents of prison life. [TAC. 11-13].

2  The Ninth Circuit has observed that "[t]here is no single standard for determining whether a prison

3  hardship is atypical and significant, and the condition or combination of conditions or factors requires case

4  by case, fact by fact consideration." Ramirez, 334 F.3d at 861 (internal quotation marks and ellipsis

5  omitted). Three "guideposts" from Sandin guide the required case-specific factual inquiry into whether state

6  action imposed an "atypical and significant hardship": (1) whether the challenged condition "'mirrored those

7  conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported

8  with the prison's discretionary authority"; (2) the duration of the condition and the degree of restraint

9  imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

10  Ramirez, 334 F.3d at 861 (quoting Sandin, 515 U.S. at 486-487 and citing Keenan, 83 F.3d at 1088); see

11  also Keenan, 83 F.3d at 1089 ("The Sandin Court seems to suggest that a major difference between the

12  conditions for the general prison population and the segregated population triggers a right to a hearing.").

13  While administrative segregation "typically . . . in and of itself does not implicate a protected liberty

14  interest," it may do so under certain circumstances. Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003)

15  (holding that a handicapped inmate who was confined in administrative segregation for two months without

16  use of his wheelchair suffered an atypical and significant hardship), cert. denied, 543 U.S. 825 (2004).

17  In Jackson, the Ninth Circuit reversed dismissal of a section 1983 due process claim where the

18  complaint alleged facts showing that "the three custody levels in California state prisons—general

19  population, administrative segregation, and the SHU—each materially differ from the other." Jackson, 353

20  F.3d at 755. The prisoner alleged, for example, that general population inmates had more contact visits,

21  more freedom to move without restraint, the ability to make monthly phone calls and possess more personal

22  property, and were able to better care for their health, get a job, and learn a trade. Jackson, 353 F.3d at 755-

23  756. The prisoner also adequately alleged that the conditions in the SHU, such as "loss of privileges, the

24  confiscation of and damage to personal property, and the distance it created between himself and friends and

25  family" created a "major disruption in his environment" relative to conditions in the general population or

26  in administrative segregation. Accordingly, the prisoner "covered his bases" and met his burden to allege

27  facts that could entitle him to relief. Jackson, 353 F.3d at 756; see also Ramirez, 334 F.3d at 861 (reversing

28  and remanding dismissal of a due process claim for application of the Sandin factors where the prisoner

1   alleged that his segregated unit was overcrowded and violent, the "isolation severed ties with his family,"

2   he was required to participate in psychiatric programs, and he was in segregated confinement for a period

3   of two years); cf. Resnick, 213 F.3d at 448 (affirming dismissal of a due process claim where the complaint

4   contained "no allegation" that the prisoner's segregation in the security housing unit was "materially

5   different" from conditions in purely discretionary segregation or the general population).

6          Viewing the TAC in the light most favorable to plaintiff, it adequately alleges that there are

7   significant, material, and specific differences between the conditions plaintiff faced in segregated

8   confinement and the general population, and that the conditions in segregated confinement imposed an

9   atypical and significant hardship. For example, plaintiff alleges that for 16 months, he was denied hot meals,

10  contact visits, and phone calls available to inmates in the general population, including routine phone calls

11  with his family and an emergency phone call to his mother after receiving a letter saying that she had gone

12  blind due to diabetes.  He was restricted to three showers a week instead of having unlimited access to

13  showers. He was allowed no clothing other than a jumpsuit, boxers, t-shirt, and socks, even during cold

14  winter nights, compared to the jacket, jeans, and shirts issued to general population inmates. He was denied

15  educational programs and wage-earning prison work available to general population inmates. He was

16  double-celled with an inmate who attacked him.  [TAC 11-14]. See Jackson, 353 F.3d at 756.

17         Notably, plaintiff alleges that he was subjected to these conditions not for a few days or even a few

18  weeks, but for a year and four months, a fact that is relevant under Sandin to assess whether the challenged

19  conditions rise to the level of an atypical and significant hardship or a major disruption of the inmates

20  environment.  See Sandin, 515 U.S. at 486-487 (explaining that the duration of the condition is a factor to

21  be considered); Ramirez, 334 F.3d at 861 (holding that the two-year duration of segregation was relevant

22  to assessing whether segregation posed an atypical and significant hardship).

23         It is not clear from the TAC and attached exhibits the extent to which plaintiff's administrative

24  segregation should be classified as "purely discretionary" administrative segregation or as disciplinary

25  detention under California state prison regulations. Compare 15 Cal. Code Regs. §§ 3000, 3330 (disciplinary

26  detention) with Cal. Code Regs. §§ 3335, 3339 (administrative segregation); see also Cal. Code Regs. §

27  3340(stating that disciplinary detention is not considered administrative segregation). Plaintiff was initially

28  placed in administrative segregation due to his involvement in the February 6, 2001 incident leading to the

1  RVR and attempted murder charge.  After disciplinary hearings on March 13, 2001 and May 25, 2001, he

2  was twice found guilty of attempted murder and sentenced to a term of SHU confinement. Those disciplinary

3  convictions were later vacated.  During this entire period, plaintiff continued to be held in segregated

4  confinement. Plaintiff subsequently was convicted and sentenced to an SHU term by Kelsey following the

5  April 2002 disciplinary hearing.  [See TAC 2-4 & Exs. A, B & M].

6       The manner in which plaintiff's confinement is classified is relevant insofar as it defines his

7  conditions of confinement, but the controlling issue is how those conditions compared to confinement in

8  the general population or non-punitive administrative segregation. See Sandin, 515 U.S. at 476 n.2 (holding

9  that no protected liberty interest existed where "at the time of [the prisoner's] punishment, disciplinary

10  segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in

11  administrative segregation and protective custody," all of whom were housed in the same special holding

12  unit); Ramirez, 334 F.3d at 861 (reversing and remanding for application of the Sandin factors where the

13  prisoner was confined in administrative segregation for disciplinary reasons); Resnick, 213 F.3d at 444

14  (holding that the plaintiff "has not alleged that his confinement, whether administrative or disciplinary,

15  presented the type of atypical, significant deprivation that might conceivably create a liberty

16  interest")(internal quotation marks and ellipsis omitted).

17       Viewing the TAC in the light most favorable to plaintiff and drawing all reasonable inferences in

18  his favor, plaintiff has alleged facts showing that his segregated confinement imposed an atypical and

19  significant hardship in relation to the ordinary incidents of prison life, triggering his right to procedural due

20  process protection.

21       **(3)   Disciplinary hearing**

22       Plaintiff alleges that Kelsey violated his procedural due process rights in several respects. Defendants

23  contend that plaintiff's disciplinary hearing was procedurally adequate.

24       In the context of prison disciplinary proceedings, a prisoner is entitled to : (1) advance written notice

25  of the charges; (2) a brief period of time, no less than 24 hours, to prepare for a hearing; (3) a written

26  statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action; (4) an

27  opportunity to call witnesses and present documentary evidence when doing so would not be unduly

28  hazardous to institutional safety or correctional goals; and (5) an opportunity to seek the aid of a fellow

1   inmate or prison staff for complex matters. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-570 (1974); <u>Walker</u>

2   <u>v. Sumner</u>, 14 F.3d 1415, 1420 (9th Cir. 1994), <u>abrogated on other grounds by</u> <u>Sandin</u>, 515 U.S. at 484-487.

3   When state prison regulations provide a prisoner with more extensive protections than those required by

4   <u>Wolff</u>, however, the due process clause does not require the state to comply with its own, more generous

5   procedures. <u>Walker</u>, 14 F.3d at 1419-1420.

6          Only the fourth requirement is implicated by plaintiff's allegations that Kelsey infringed his

7   procedural due process rights. <u>Wolff</u> held that an "inmate facing disciplinary proceedings should be allowed

8   to call witnesses and present documentary evidence in his defense when permitting him to do so will not be

9   unduly hazardous to institutional safety or correctional goals." <u>Wolff</u>, 418 U.S. at 566. Prison officials,

10  however, "must have the necessary discretion to keep prison disciplinary hearings within reasonable limits.

11  . . ." <u>Wolff</u>, 418 U.S. at 566.  Thus, the due process rights delineated in <u>Wolff</u> are "circumscribed by the

12  necessary 'mutual accommodation between institutional needs and objectives and the provisions of the

13  Constitution that are of general application,'" and a prison disciplinary body may refuse a request to present

14  evidence for "irrelevance, lack of necessity, or the hazards presented in individual cases." <u>Baxter v.</u>

15  <u>Palmigiano</u>, 425 U.S. 308, 321 (1976)(quoting <u>Wolff</u>, 418 U.S. at 556, 566).

16         The TAC alleges that plaintiff requested that Officers French, Whitcomb, Mallet, and Crockett be

17  present and testify at his disciplinary hearing, and that Kelsey wrongly denied him the right to call those

18  witnesses by falsely asserting in his disciplinary hearing report that after reviewing the Investigating

19  Employee's report, plaintiff "stated that he was satisfied with the interviews conducted and previously

20  requested staff witnesses were not required." [<u>See</u> TAC 5 & Exs. G, H & M].

21         An inmate may waive his right to request witness testimony at a disciplinary hearing. Such a waiver

22  need not be in writing to satisfy constitutional due process standards, and the waiver may be implicit rather

23  than explicit. See <u>Bedoya v. Coughlin</u>, 91 F.3d 349, 352 (2d Cir. 1996)(stating that "an inmate's silence can

24  constitute a waiver of his due process right to request witness testimony at a disciplinary hearing," and

25  holding that the inmate waived his right to call a witness "by failing either to reiterate his request for [the

26  witness's] testimony when given the opportunity or to object to the close of the hearing"); <u>McCann v.</u>

27  <u>Coughlin</u>, 698 F.2d 112, 123 (2d Cir. 1983)(reversing the district court's factual finding that an inmate

28  waived his right to call witnesses at a disciplinary hearing by failing to request a witness where the

1  "overwhelming and uncontradicted evidence" was that inmates at that facility had never been allowed to call

2  witnesses); see also Ivy v. Moore, 31 F.3d 634, 638 (8th Cir. 1994)(Heaney, J., dissenting)(noting that there

3  was no indication in the record that the inmate waived his right to have requested witnesses testify at his

4  prison disciplinary hearing); cf. Walker, 14 F.3d at 1420-1421 (reversing grant of summary judgment in

5  favor of prison officials under Wolff where prison rules required an inmate's signed, written waiver of the

6  right to appear at a disciplinary hearing, and the absence of such a written waiver created an inference that

7  the inmate did not waive his right to be present).

8        Plaintiff, however, alleges that he did not waive his right to present witness testimony, and that

9  Kelsey was wrong in reporting that plaintiff said he was satisfied with the Investigating Employee's report

10  and did not require oral testimony by the officer witnesses he previously had requested.  For purposes of this

11  motion to dismiss, plaintiff's factual allegations must be credited.  Therefore, plaintiff's claim that Kelsey

12  violated plaintiff's due process right to present witness testimony during his disciplinary hearing should not

13  be dismissed.[2]

14        Plaintiff also alleged that he requested that the knife recovered at the scene and used in the alleged

15  attempted murder be analyzed for fingerprints, and that the failure to grant this request or "produce physical

16  evidence lab test results showing who possessed the knife" denied him due process. [TAC 5, 14 & Ex. H].

17  Courts confronting due process claims based on prison officials' denial of requests for fingerprinting and

18

19  _____

20  [2]      Plaintiff contends that he requested that those officers testify because they were eye witnesses
   whose oral testimony would help bolster the credibility of his version of the facts. See Wolff, 418

21  U.S. at 583 (Marshall and Brennan, JJ., concurring and dissenting in part)(observing that the right
   to present witnesses and evidence "to corroborate his version of the facts is particularly crucial to

22  an accused inmate, who obviously faces a severe credibility problem when trying to disprove the
   charges of a prison guard"); Graham v. Baughman, 772 F.2d 441, 445 (1985)(noting that prison

23  disciplinary proceedings often amount to "a swearing contest between the inmate and the charging
   officer," and that "'merely corroborative' evidence is many times the most probative for it may

24  substantiate and make credible and otherwise bald and self-serving position")(footnote omitted).
   Although plaintiff has a right to present witness testimony in his defense, he has no absolute due

25  process right to "confront and cross-examine adverse witnesses," as he alleges. [TAC 8]. Wolff, 418
   U.S. at 566-568. Plaintiff, however, can pursue a claim for denial of his procedural due process right

26  to call witnesses regardless of the likelihood the witnesses' testimony would have changed the
   outcome of the disciplinary hearing. See Carey v. Piphus, 449 U.S. 247, 266-267 (1978)(holding that

27  the deprivation of procedural due process rights is actionable for nominal damages without proof of
   actual injury).

28

other scientific analyses have concluded that the minimal procedural guarantees prescribed by Wolff do not encompass a right to have evidence tested for fingerprints or subjected to similar scientific analyses. Rather, Wolff gives inmates the right to present evidence that they collect (alone or with the help of a fellow inmate or staff member for "complex matters"), subject to the qualification that "[w]hen prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason." Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992)(per curiam); see Freitas v. Auger, 837 F.2d 806, 812 n.13 (8th Cir.1988) (holding that under Wolff, an inmate was not entitled to a polygraph examination regarding whether he participated in planning or furthering escape); Miller v. Brown, 2007 WL 1876506, at 7-8 (D.N.J. 2007)(holding that allegations that prison officials rejected an inmate's demands for fingerprinting and polygraph testing did not state a due process claim); Hill v. Buss, 2006 WL 3775981, at *1 (N.D.Ind. 2006)(holding that an inmate had no constitutional due process entitlement to fingerprint testing of a weapon as a part of a disciplinary hearing)(citing Freitas, 837 F.2d at 812 n.13); Lian v. Holt, 2006 WL 1000026, at *3 (M.D. Pa. 2006)(holding that the failure of prison officials to dust evidence confiscated from an inmate's cell for fingerprints did not violate his due process rights); Liebers v. Clarke, 2005 WL 2347270, at *3 (D. Neb. 2005)(holding that there was "no basis in the Constitution to require" state prison officials "to use polygraphs and fingerprinting techniques in prison disciplinary investigations, even at an inmate's own expense"); Hamilton v. Scott, 762 F.Supp. 794, 797, 802 (N.D. Ill.1991)(rejecting an inmate's claims that his due process rights were violated when prison staff's "ignored" his request for a fingerprint analysis of a weapon and a polygraph examination because the inmate "had no constitutional right to the grant of his request for 'scientific' testing to establish non-ownership of the weapon"); United States ex rel. Wilson v. DeRobertis 508 F.Supp. 360, 362 (N.D. Ill. 1981)(rejecting the contention that an inmate was entitled to the opportunity to exonerate himself in a polygraph examination, and explaining that "[n]othing in Wolff absolutely requires prison officials . . . to administer costly polygraph examinations to those charged with disciplinary violations. While such procedures may at times be necessary to ensure fundamental fairness, the court does not find any constitutional error . . . under the circumstances present here."); cf. Koenig, 971 F.2d at 423 (holding that due process was satisfied where prison officials denied an inmate's request for a an alternative, independent urinalysis drug test at his own expense because granting his request would have

1   a ripple effect and not every inmate could afford to pay for chemical tests).[3]

2       A fingerprint test of the knife was not necessary "to ensure fundamental fairness" in this case.

3   Plaintiff alleged that fingerprint test results would have tended to show that "he never possessed the knife"

4   that "was allegedly discovered at the scene." [TAC 6]. Kelsey, however, cited Garcia's testimony that she

5   saw plaintiff "slide what appeared to be a weapon" under the door of cell 140, whereupon the weapon hit

6   the door and slid about four feet, as well as the report of Correctional Officer C. Chavez, who reported that

7   while securing the scene of the February 6, 2001 altercation, he "discovered a stabbing instrument on the

8   floor between Cell 138 and Cell 139" and logged that instrument into evidence. [TAC, Exs. G & I]. As

9   explained in by a district court in a case in which the inmate sought to exonerate himself from possession

10  of a weapon, "[a]t most a fingerprint test of the weapons might have shown the absence of [the inmate's]

11  fingerprints and perhaps the existence of others," but "such facts would not directly undercut" evidence that

12  the weapon was discovered in the inmate's cell, and the court "is not empowered to reweigh the evidence"

13  supporting a disciplinary conviction. Hamilton, 762 F.Supp. at 802; see generally Superintendent, Walpole

14  Correctional Institution v. Hill, 472 U.S. 445, 455-456 (1985). Accordingly, the TAC does not state a due

15  process claim based on the denial of plaintiff's request for a fingerprint analysis of the alleged attempted

16  murder weapon.

17      Plaintiff also sought to present as evidence photographs of himself and Hayes taken after the

18  _____

19      [3]   In Koening, the Ninth Circuit did not expressly consider whether Wolff gives prisoners a
procedural due process *right* to have an alternative urinalysis conducted by the institution at the

20  inmate's expense absent a legitimate penological reason for denying such a request.  The court
actually decided only the question whether the defendants had provided a legitimate penological

21  justification for denying the request.  The Ninth Circuit adopted the reasoning of a district court
decision which denied a request for an alternative urinalysis due to the foreseeable financial,

22  administrative and personnel burdens on prisons attendant on accommodating the "asserted right"
to such a test.  See Koenig, 971 F.2d at 423 (citing Pella v. Adams, 723 F.Supp. 1394, 1395-1396

23  (D. Nev. 1989)).  The district court concluded in Pella that "[w]hen accommodation of an asserted
right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be

24  particularly deferential to the informed discretion of prison officials." Pella, 723 F.Supp. at 1396
(quoting Turner v. Safley, 482 U.S. 78 , 90 (1987)).  The "ripple effect" and the burdens on

25  institutional resources envisioned by Koenig and Pella in connection with granting inmate requests
for alternative drug testing are equally applicable to inmate requests for fingerprint tests and other

26  types of scientific analyses of evidence because inmates do not have "independent access to the
necessary materials to conduct a scientifically accepted testing procedure/process" and therefore

27  cannot procure those tests "unless the institution makes it available." Pella, 723 F.Supp. at 1295.

28

incident. He alleges that those photographs would have tended to show that Hayes was covered with Ramirez's blood and that plaintiff was not. [TAC 5-6 & Ex. H]. Unlike the fingerprint analysis, the TAC indicates that the photographs plaintiff allegedly requested had been taken and were available, and Kelsey relied in part on photograph evidence to find plaintiff guilty. Neither the Investigating Employee's report or Kelsey's hearing decision mentions a request for photographs or provides any explanation for refusing to allow them to be presented. [See TAC, Exs. G, H & I]. Crediting as true plaintiff's allegations that he requested the opportunity to present the photographs and his request was inexplicably denied, the TAC states a claim for denial of his right to present documentary evidence.

To the extent that plaintiff also is alleging a separate violation of his due process rights on the ground that there was "no evidence" to support the hearing decision [TAC 15], that claim fails. A prison disciplinary decision need be supported only by "some evidence." Hill, 472 U.S. at 454. Kelsey's hearing decision is based on "some evidence" in the form of the reports of Garcia and other officers who responded to the incident, evidence bloodstains on plaintiff's clothing, and medical reports. [TAC, Ex. G]. Plaintiff has alleged that he was denied the opportunity to present some exculpatory evidence and he has pointed to contradictions or inconsistencies in the evidence before Kelsey. He also alleges that portions of the hearing decision were "falsified" because Kelsey falsely indicated that plaintiff had waived his right to call staff witnesses and falsely indicated that plaintiff received a finalized copy of the hearing decision in May 2002 rather than in July 2002. [TAC 14-15].

Ascertaining whether "some evidence" supports Kelsey's decision "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." Hill, 472 U.S. at 455. As long as "there is any evidence in the record that could support" the hearing decision, due process is satisfied. Hill, 472 U.S. at 455. Some evidence in the record supports Kelsey's decision. Plaintiff disagrees with the inferences Kelsey drew from the evidence before him. Plaintiff also contends that he improperly was denied the ability to present exculpatory evidence, and that Kelsey's hearing decision did not accurately reflect that fact. Those contentions do not alter the conclusion that there was at least some evidence supporting Kelsey's decision. See Hill, 472 U.S. at 455 (holding that where a prison guard's testimony and his written report indicated that the guard heard a commotion, discovered an inmate who had just been assaulted, and saw three other inmates, including the petitioner, fleeing together down

1   an enclosed hallway, there was "some evidence" supporting the inmate's disciplinary conviction even though

2   the evidence was "meager, and there was no direct evidence identifying any one of three inmates as the

3   assailant").

4   **Qualified immunity**

5   To determine whether a defendant is entitled to qualified immunity, a court must first consider whether

6   the facts alleged, taken in the light most favorable to the party asserting the injury, show that the defendant

7   committed a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Siegert v. Gilley,

8   500 U.S. 226, 232 (1991)); Galen v. County of Los Angeles, 477 F.3d 652, 658-659 (9th Cir. 2007). If no

9   constitutional violation occurred on the facts alleged, there is no need to proceed further with the qualified

10  immunity analysis. Saucier, 533 U.S. at 201. If, on the other hand, "a violation could be made out on a

11  favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly

12  established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case,

13  not as a broad general proposition . . . ." Saucier, 533 U.S. at 201; Martinez v. Stanford, 323 F.3d 1178,

14  1183 (9th Cir. 2003). The "clearly established" inquiry involves asking two distinct questions: "(1) Was the

15  law governing the state official's conduct clearly established? (2) Under that law could a reasonable state

16  official have believed his conduct was lawful?" Vance v. Barrett, 345 F.3d 1083, 1091 (9th Cir. 2003)

17  (quoting Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002)). Thus, "[t]he contours of

18  the right must be sufficiently clear that a reasonable official would understand that what he is doing violates

19  that right." Saucier, 533 U.S. at 202(quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)); Galen, 477

20  F.3d at 658-659. Qualified immunity is warranted where "the law did not put the defendant on notice that

21  his conduct would be clearly unlawful," and the doctrine protects "all but the plainly incompetent or those

22  who knowingly violate the law." Saucier, 533 U.S. at 202 (quoting Malley v. Briggs, 475 U.S. 335, 341

23  (1986)). The plaintiff bears the burden of proving that the right allegedly violated was clearly established

24  at the time of the alleged misconduct. Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991).

25  The TAC fails to state a claim for deprivation of plaintiff's procedural due process rights under Wolff

26  arising from the denial of plaintiff's request for fingerprint testing, and therefore it is not necessary to

27  proceed to the second step of the qualified immunity with respect to that claim. The TAC, however, states

28  a claim for denial of plaintiff's procedural due process rights in connection with Kelsey's denial of plaintiff's

right to call witnesses and present the photographic evidence he allegedly requested. Therefore, the question is whether plaintiff has met his burden to show that Kelsey is not entitled to qualified immunity at this stage of the case.

Wolff was decided in 1974, and its requirements were clearly established law at the time of plaintiff's 2002 disciplinary hearing with respect to the scope of a prisoner's procedural due process rights in a disciplinary hearing where the prisoner had demonstrated entitlement to due process protection. A reasonable officer in Kelsey's position would have understood that plaintiff could not be denied the opportunity to present witnesses or evidence arbitrarily or for reasons that the officer knew to be false, and that is what plaintiff alleges. See Serrano, 345 F.3d at 1074, 1080 (stating that "it is certainly clearly established that 'the inmate facing disciplinary proceedings should be allowed to call witnesses in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals'")(quoting Wolff, 418 U.S. at 566); e.g., Jones v. Clemente, 2004 WL 2624723, a *9 (D. Or. 2004)(holding that at the time of a prison disciplinary hearing in 2002, "it was clearly established that a prisoner charged with a disciplinary violation is entitled to certain due process protections" under Wolff).

This conclusion is buttressed in part by California state prison regulations prescribing the conduct of a prison disciplinary hearing. See 15 Cal. Code Regs. § 3315(e)(stating that inmates requested by a witness shall be called unless their appearance would endanger the witness, the witness has no relevant or additional information, or the witness is unavailable); 15 Cal. Code Regs. § 3320(l)("The inmate may present documentary evidence in defense or mitigation of the charges."). Accordingly, for purposes of this motion to dismiss, plaintiff has shown that Kelsey is not entitled to qualified immunity.

**Punitive damages**

Defendant contends that plaintiff's punitive damages claim should fail because he has not alleged any evil motive or intent by Kelsey. Punitive damages may be awarded under section 1983 when a defendant's conduct was malicious, wanton, or oppressive. See Dang v. Cross, 422 F.3d 800, 807-810 (9th Cir. 2005). Plaintiff has not alleged that Kelsey's conduct was malicious, wanton, or oppressive, nor do the facts alleged in the TAC demonstrate conduct of that nature. Accordingly, plaintiff's request for punitive damages should be dismissed.

///

1

### Recommendation

2        For the foregoing reasons, defendant's motion to dismiss should be **granted in part** and **denied in**

3 **part.** The motion should be (1) granted as to plaintiff's Eighth Amendment claim, and that claim should

4 be dismissed with prejudice ; (2) granted as to plaintiff's Fourteenth Amendment procedural due process

5 claim arising from the denial of plaintiff's request for a fingerprint test, and that claim should be dismissed

6 with prejudice; and (3) denied as to plaintiff's Fourteenth Amendment procedural due process claim arising

7 from Kelsey's alleged denial of plaintiff's right to call witnesses and present photographic evidence.

8

9 DATED: _____

10

11                     ANDREW J. WISTRICH

                    United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28